IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOSEPH KELLY DINGLER,      §
     §
        Petitioner,      §
     §
V.      §        No. 3:21-cv-893-K-BN
     §
DALLAS COUNTY JUDGE D'METRIA      §
BENSON,      §
     §
        Respondent.      §

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner Joseph Kelly Dingler initiated this *pro se* action against Respondent Dallas County Judge D'Metria Benson through a filing titled FRAP 21 Petition for Writ of Habeas Corpus, Emergency Injunctive and Declaratory Relief Requested [Dkt. No. 1] (the Habeas Petition). And United States District Judge Ed Kinkeade referred Dingler's action to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

Dingler then filed a petition construed as seeking leave to proceed *in forma pauperis* [Dkt. No. 4], which the undersigned recommends that the Court grant insofar as it should consider Dingler's claims. The undersigned further recommends, consistent with the findings of fact and conclusions of law set out below, that the Court deny Dingler's request for temporary and accelerated injunctive relief and dismiss this case with prejudice.

### Applicable Background

Dingler    filed    this    case    in    federal    court    "ask[ing]    for    habeas

declaration/injunction against a State Court that does not have jurisdiction to rule on the principle matter." Dkt. No. 1 at 1. The principle matter appears to be an eviction proceeding against Dingler. *See, e.g., id.* at 10 ("Without lengthy briefing to the court; this Habeas reaches into the subject matter brought to this court, styled as Studio 6 v. Dingler, given docket number 21-10230 and all pleadings in the District Court, particularly DE28 should be included here for consideration of all matters of law and questions of facts.").

Dingler attaches to the Habeas Petition a filing he made in *Studio 6 v. Dingler*, No. 3:21-cv-278-B-BH. *Compare id.*, Dkt. No. 28, *with* Dkt. No. 1-10. That proceeding, for forcible detainer, was removed from the County Court at Law No. 1 of Dallas County to this Court by Dingler and was remanded for lack of jurisdiction. *See Studio 6 v. Dingler*, No. 3:21-cv-278-B-BH, 2021 WL 919077 (N.D. Tex. Feb. 18, 2021), *rec. accepted*, 2021 WL 913311 (N.D. Tex. Mar. 10, 2021), *appeal filed*, No. 21-10230 (5th Cir.). And the background of *Studio 6 v. Dingler* provides insight into the relief that Dingler now seeks:

> On or about October 30, 2020, Napash "Nick" Prajapah filed an original petition for forcible detainer on behalf of Studio 6 (Plaintiff) against Joseph Dingler (Defendant) in the Justice of the Peace Court, Precinct 5, Place 2, of Dallas County, Texas, alleging non-payment of rent and seeking possession of the premises known as 10326 Finnell St. 237, Dallas, Texas (Premises). The case was tried on November 13, 2020, and the court ruled in favor of Plaintiff. Defendant appealed the decision to the County Court at Law No. 1 of Dallas County, and trial was scheduled for January 26, 2021. The trial was subsequently continued until February 9, 2021. On February 5, 2021, Defendant filed a notice of removal of the action to the federal district court for the Northern District of Texas, Dallas Division, alleging that the proceedings violated the United States Constitution.

*Studio 6*, 2021 WL 919077, at *1 (citations and footnote omitted).

Judge Benson, the respondent here, presides over Dallas County Court at Law No. 1. And Dingler appears to now argue that the state court decisions adverse to him (and in favor of his being evicted), possibly including by Judge Benson, have violated moratoriums against evictions instated in response to the COVID-19 pandemic by the CARES Act, the Coronavirus Aid, Relief, and Economic Security Act, PUB. L. NO. 116-136; the Centers for Disease Control; and Texas courts. *See, e.g.*, Dkt. No. 1 at 3 ("While this order to prevent eviction is effectuated to protect the public health, the States and units of local government are reminded that the Federal Government has deployed unprecedented resources to address the pandemic, including housing assistance. Neither the JP Court nor the de novo review has provided any means to access this assistance program & thus, discriminating against the Tenant where others enjoy the benefits." (emphasis omitted)).

Dingler also equates the decisions adverse to him in the state proceeding to his being in state custody for the purpose of seeking habeas relief. *See, e.g.*, *id.* at 7 ("[I]t's raised through § 2254 that Tenant is still under restraint of the JP Court, even though he is currently in the State County Court for 'de novo' review. Likewise, the restraint on 5th Amendment liberty in the de novo setting; presents considerable restraint on liberty under unconstitutional Texas Law and schemes used to circumvent a Federally Protected Liberty Interest. Accordingly, even under the most liberal of construction and giving a court enough jurisdiction to determine whether or not it has jurisdiction; any order by a defective Court is not just voidable, but is VOID. Texas scheme of electing it's judges deprives even this most rudimentary of

jurisdiction to rule. This fact demands that any ruling on these facts must be obtained in a Federal Jurisdiction…. This is a type of 'constructive custody' under 5th Amendment understanding; in the very same manner habeas would issue for a criminal sentence handed down by Court without jurisdiction.").

## Legal Standards and Analysis

Temporary and accelerated injunctive relief – through either a temporary restraining order or a preliminary injunction – "is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance," *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997) (citing *Allied Mktg. Grp., Inc. v. C.D.L. Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989)).

So, insofar as Dingler seeks such relief, to obtain it, he must unequivocally "show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009) (internal quotation marks omitted); *accord Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

But he cannot show that there is a substantial likelihood that he will prevail on the merits of this case for at least the following reasons.

First, Dingler is not "in custody" for the purpose of seeking habeas relief. And a federal court lacks subject matter jurisdiction to entertain a habeas petition if, at

the time it is filed, the petitioner (typically a prisoner) is not "in custody" under the conviction and sentence he seeks to attack. *See* 28 U.S.C. § 2241(c); 28 U.S.C. § 2254(a); *Hendrix v. Lynaugh*, 888 F.2d 336, 337 (5th Cir. 1989).

A petitioner need not be physically confined to be "in custody" for the purposes of habeas relief. But, "once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." *Maleng v. Cook*, 490 U.S. 488, 492 (1989); *see also Hendrix*, 888 F.2d at 337-38 (adverse consequences of expired sentence, including possibility that conviction may be used to impeach future testimony and enhance future punishment, held insufficient to satisfy the "in custody" requirement of Section 2254).

Likewise, outside the criminal context, "an individual subject to a final deportation order … is in custody for § 2241 purposes." *Kumarasamy v. Attorney General of U.S.*, 453 F.3d 169, 172-73 (3d Cir. 2006) (collecting cases) (decision cited by Dingler). But "petitioners who have already been removed from the country do not satisfy the 'in custody' requirement for habeas corpus jurisdiction," because, once removed, a petitioner "is 'not subject to restraints not shared by the public generally that significantly confine and restrain his freedom.'" *Id.* at 173 (citations omitted).

Similarly, Dingler has not shown how the state court rulings he now collaterally attacks in federal court have restrained his freedom such that he may be considered "in custody" for habeas relief.

Next, to the extent that Dingler seeks to enjoin any ongoing forcible detainer

action in state court, the Anti-Injunction Act (the AIA) provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments," 28 U.S.C. § 2283, language which "has been interpreted consistently as an absolute bar to any federal court action that has the effect of staying a pending state court proceeding unless that action falls within one of the Act's three specifically designated exceptions," *Phillips v. Charles Schreiner Bank*, 894 F.2d 127, 131-32 (5th Cir. 1990) (footnotes and citations and omitted).[1]

> The prohibition against interfering in state proceedings embodies a strong policy that, recognizing the "independence of the States and their courts, the exceptions should not be enlarged." A federal court cannot enjoin a state-court suit on the grounds that "the state court may have taken action which the federal court [is] certain [is] improper," nor is it appropriate to avoid simultaneous pursuit of claims in courts with concurrent jurisdiction.
>
> Under the Act, an injunction is not appropriate just because it is "related" to the federal court's jurisdiction. If the state court takes an action the federal court or a party to the action finds incorrect, the proper course is typically the state appellate court. Any doubts about the "propriety of a federal injunction ... should be resolved in favor of permitting the state courts to proceed.... The explicit wording of § 2283 itself implies as much."

*Aptim Corp. v. McCall*, 888 F.3d 129, 143-44 (5th Cir. 2018) (quoting *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287, 295-96, 295, 296, 297 (1970)).

---

[1] *Cf. Health Net, Inc. v. Wooley*, 534 F.3d 487, 493 n.2 (5th Cir. 2008) ("'It must be remembered that the anti-injunction act limits federal remedies without ousting federal subject-matter jurisdiction.'" (quoting 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4469 at 82 n.19 (2d ed. 2002))).

The only Act of Congress Dingler cites is the CARES Act. But he has not shown that the CARES Act operates like 42 U.S.C. § 1983, for example, "an express authorization from Congress permitting federal courts to enjoin state proceedings in order to protect federal rights." *Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018) (citing *Mitchum v. Foster*, 407 U.S. 225, 242-43 (1972)).

Indeed, it is not clear that the CARES Act affords a plaintiff a federal cause of action, much less that the CARES Act "preempts state eviction laws." *Menhardt v. Tracy*, No. 20-cv-08670-NC, 2020 WL 8513086, at *2 (N.D. Cal. Dec. 24, 2020) (observing that that "Court is not aware of any federal cases that discuss whether the CARES Act preempts state eviction laws").

Further, even if the Court construes Dingler as asserting civil rights claims against Judge Benson as a state actor, Section 1983 itself would prevent the Court from enjoining the state court proceeding, because Section 1983 "expressly disallows injunctive relief against a judicial officer 'for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable.'" *Hatton v. Combs*, 793 F. App'x 801, 803 (10th Cir. 2019) (quoting 42 U.S.C. § 1983; citing *Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011) ("Although we have previously said that a plaintiff may obtain an injunction against a state judge under 42 U.S.C. § 1983, those statements were abrogated by the Federal Courts Improvement Act of 1996, which provides that 'injunctive relief [against a judicial officer] shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable,' 42 U.S.C. § 1983." (citations omitted))).

Dingler's seeking collateral review of a pending state court action, to effectively prevent the state court from taking further actions, also implicates abstention under *Younger v. Harris*, 401 U.S. 37 (1971), which, "following *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 10-11 (1987), [ ] also applies 'when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government,'" *Health Net*, 534 F.3d at 494.

*Younger* abstention "applies only to three exceptional categories of state proceedings: ongoing criminal prosecutions, certain civil enforcement proceedings akin to criminal prosecutions, and pending civil proceedings involving certain orders ... uniquely in furtherance of the state courts' ability to perform their judicial functions." *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (quoting, in turn, *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) (*NOPSI*)); internal quotation marks omitted).

And the doctrine requires that federal courts decline to exercise jurisdiction where three conditions are met: "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Bice v. La. Pub. Defender Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); internal citations omitted); *accord Hood*,

- 8 -

822 F.3d at 222-23.

This case fits within the third of the three exceptional categories identified in *NOPSI* that "define *Younger*'s scope." *Sprint*, 571 U.S. at 78. "For the district court to address claims that question the manner in which a state court handles the enforcement of its orders would directly cause the federal court to interfere with a state court's administration of its duties." *Dandar v. Church of Scientology Flag Serv. Org., Inc.*, 619 F. App'x 945, 948-49 (11th Cir. 2015) (per curiam) (citing *NOPSI*, 491 U.S. at 359, and then finding that "the district court did not abuse its discretion when it found that the case fell within one of the enumerated circumstances" (citing *Sprint*, 571 U.S. at 78)); *see also Pennzoil Co.*, 481 U.S. at 13-14 ("Both *Juidice[ v. Vail*, 430 U.S. 327 (1977),] and this case involve challenges to the processes by which the State compels compliance with the judgments of its courts. Not only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained."); *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 671 (10th Cir. 2020) ("Thus, both *Juidice* and *Pennzoil* involved requests to directly or indirectly thwart state court compliance processes." (citing *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002) ("*Younger* governs whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly."); *Zeeco, Inc. v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-CV-384-JED-FHM, 2017 WL 6539504, at *2 (N.D. Okla. Dec. 21, 2017) ("What *Younger*, *Juidice*,

and *Pennzoil* have in common is that they all involved plaintiffs filing separate federal suits in an attempt to enjoin ongoing state proceedings.")))

The additional *Middlesex County* factors are also present here: "In this case, the state proceedings are judicial in nature and represent important state interests, as state courts must be empowered to enforce their own orders and judgments. Moreover, [Dingler] has had opportunities to raise his federal challenges in these state proceedings and there has been no procedural bar to his doing so." *Dandar*, 619 F. App'x at 949; *see also Pennzoil Co.*, 481 U.S. at 15 ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that the state procedures will afford an adequate remedy."); *Moore v. Sims*, 442 U.S. 415, 425-26 (1979) ("Certainly, abstention is appropriate unless state law clearly bars the interposition of the constitutional claims."); *Gates*, 885 F.3d at 880 ("The relevant question is whether the would-be federal plaintiff has the *opportunity* to raise his federal claims in state court." (citing *Moore*, 442 U.S. at 425).

Also, that Dingler collaterally attacks state court civil proceedings deprives this Court of any jurisdiction it may otherwise have.

> "Absent specific law otherwise providing, [the *Rooker-Feldman*] doctrine directs that federal district courts lack jurisdiction to entertain collateral attacks on state court judgments. Constitutional questions arising in state proceedings are to be resolved by the state courts. If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court. The casting of a complaint in the form of a civil rights action cannot circumvent this rule, as absent a specific delegation "federal district court[s], as court[s] of

original jurisdiction, lack[ ] appellate jurisdiction to review, modify, or nullify final order[s] of state court[s]."

*Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994) (quoting *Kimball v. Fla. Bar*, 632 F.2d 1283, 1284 (5th Cir. 1980); collecting cases; footnotes omitted)).[2]

Dingler cites no federal statute that provides an established exception to the *Rooker-Feldman* doctrine. *Cf. Miller v. Dunn*, No. 3:20-cv-759-E, 2020 WL 6504663, at *3 (N.D. Tex. Nov. 5, 2020) (Section 1983 is "not a specific delegation to the federal courts that upsets how constitutional determinations are reviewed in the state courts" and "allows a collateral attack on a state court judgment where, like here, a plaintiff's constitutional claims are 'inextricably intertwined' with the state court's rulings against him." (citing *Reed v. Terrell*, 759 F.2d 472, 473-74 (5th Cir. 1985) ("[T]his Court's review of the record in the instant case reveals that the plaintiffs' suit is 'patently an attempt to collaterally attack the validity of [the state court judgment].' A review of the plaintiffs' pleadings and arguments in the instant case reveals that this suit is 'inextricably intertwined' with the state court's awards against the plaintiffs. Thus, the district court did not err in dismissing the instant

---

[2] *See also Hill v. Washburne*, 953 F.3d 296, 306 (5th Cir. 2020) (Plaintiff "cites no legal authority … suggesting that we or the district court have power to order the [state] court to reconsider its order. He similarly does not explain how such an order from us or the district court would not be an extrajurisdictional 'collateral attack[ ] on' the [state] court's proceedings." (quoting *Bell v. Valdez*, 207 F.3d 657 (table), 2000 WL 122411, at *1 (5th Cir. Jan. 4, 2000) (per curiam) ("[T]he *Rooker-Feldman* doctrine deprives federal courts of subject matter jurisdiction over [a plaintiff's] case."))); *Jordaan v. Hall*, 275 F. Supp. 2d 778, 789 (N.D. Tex. 2003) ("[T]he complaint is nothing more than a thinly veiled attempt to circumvent the state appellate process and to collaterally attack – in the guise of a federal civil rights action – the validity of a state court [judgment] and other related orders.").

suit for want of jurisdiction." (quoting *Almon v. Sandlin*, 603 F.2d 503, 506 (5th Cir.

1979), then *D.C. Ct. App. v. Feldman*, 460 U.S. 462, 483 n.16 (1983); citation

omitted)))).

And this jurisdiction-stripping doctrine applies even if the state proceeding has

not concluded. As a panel of the United States Court of Appeals for the Fifth Circuit

has explained,

> [t]here is disagreement among the circuits as to whether all state
> proceedings, including appeals, must have concluded before the federal
> suit is initiated in order for *Rooker-Feldman* to apply. Indeed, this Court
> has taken inconsistent positions on the matter: In *Hale v. Harney*, 786
> F.2d 688, 691 (5th Cir. 1986), this Court applied *Rooker-Feldman* to bar
> a federal suit despite the pendency of an appeal in state court; but in
> *Rowley v. Wilson*, 200 F. App'x 274, 275 (5th Cir. 2006) (per curiam), this
> Court declined to apply *Rooker-Feldman* because the case was on appeal
> to a state appellate court, observing that "[*Exxon Mobil Corp. v. Saudi
> Basic Indus. Corp.*, 544 U.S. 280 (2005),] tells us when a state court
> judgment is sufficiently final for operation of the *Rooker-Feldman*
> doctrine: when 'the state proceedings [have] ended.'"
>   Although *Hale* predated *Exxon*, the split in authority following
> *Exxon* on the question of finality suggests that that case did not
> "unequivocally" overrule *Hale*. *See Technical Automation Servs. Corp. v.
> Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012) ("[F]or a
> Supreme Court decision to change our Circuit's law, it 'must be more
> than merely illuminating with respect to the case before [the court]' and
> must 'unequivocally' overrule prior precedent." (second alteration in
> original)). Further, the portion of *Exxon* quoted in *Rowley* – an
> unpublished opinion with limited precedential value under 5th Circuit
> Rule 47.5.4 – is found not in *Exxon*'s holding but in its description of the
> *Rooker* and *Feldman* cases, *see Exxon*, 544 U.S. at 291. *Exxon*'s holding
> refers only to "state-court judgments rendered before the district court
> proceedings commenced." *Id.* at 284. Accordingly, we appear to be bound
> by *Hale* pursuant to this Circuit's rule of orderliness. *See Technical
> Automation Servs. Corp.*, 673 F.3d at 405-07.

*Houston v. Venneta Queen*, 606 F. App'x 725, 731-32 (5th Cir. 2016); *see also Burciaga*

*v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 n.5 (5th Cir. 2017) ("In a case pre-

dating *Illinois Central[ Railroad Co. v. Guy*, 682 F.3d 381 (5th Cir. 2012),] we found

*Rooker-Feldman* to bar review of a state court judgment when the state court appeal was pending at the time the federal action was filed. *Hale v. Harney*, 786 F.2d 688, 689-91 (5th Cir. 1986). Contrary to *Illinois Central*'s explication of the doctrine, *Hale* suggests that a state court judgment need not be issued by a court of last resort for *Rooker-Feldman* to apply. Because of this apparent tension in our case law, we do not rely on this aspect of the doctrine to resolve the jurisdictional question before us now.").

The Court should therefore deny Dingler's request for temporary and accelerated injunctive relief and dismiss this case with prejudice

## Recommendation

The Court should grant Petitioner Joseph Kelly Dingler's construed request for leave to proceed *in forma pauperis*, deny his request for temporary and accelerated injunctive relief, and dismiss this case with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure

to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     DATED: April 20, 2021

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE